**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MARGARET D. EDWARDS-FLYNN,

    Plaintiff,

vs.                                                        CIV. No. 08-0186 JB/ACT

CHERYL ANN YARA; MATTHEW SANDOVAL;
HENRY O. SANCHEZ; JOHN AVILA; CHUCK
GRIEGO; MICHAEL GALLEGOS; MACARIO
GONZALES; MORRIS MADRID; DIANE MOORE;
TONY MARQUES; EUGENE ROMERO; CRUZ
ROYBAL; AND LOUIE TRUJILLO, all in their
individual, personal, private and official capacities,
for actions committed while acting as public officers
and/or employees of the Machinery of Government of
the City of Las Vegas, New Mexico; and ERIC LETEY
and ED ZENDEL, each in their individual, personal,
private and official capacities, for actions committed
while acting as employees of the New Mexico Municipal
League, by and through the New Mexico Self-Insurers'
Fund; THE NEW MEXICO SELF-INSURERS' FUND;
THE NEW MEXICO MUNICIPAL LEAGUE;
FIFTEEN JANE DOES; and FIFTEEN JOHN DOES,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on Defendants Eric Letey, Ed Zendel, New Mexico Self-Insurer's Fund, and New Mexico Municipal League's Motion to Dismiss Plaintiff's Claims in their Entirety, filed April 7, 2008 (Doc. 17). The Court has reviewed the briefing and has determined that there is no need for a hearing. The primary issues are: (i) whether the Court should dismiss Plaintiff Margaret D. Edwards Flynn's New Mexico constitutional claims under Art. XX, § 1, Art. II, §§ 2,3,4, and 8, Art. VII, § 2, and Art. IV, § 25 because none of those provision create a private cause of action; (ii) whether the Court should dismiss Flynn's equal-protection claim under

the New Mexico Constitution; (iii) whether the Court should dismiss Flynn's claim under sections three and four of the Fourteenth Amendment to the United States Constitution because those provision do not apply to the facts of this case; (iv) whether the Court should dismiss Edwards-Flynn's federal due-process claim because Edwards-Flynn does not assert a constitutionally protectable interest that the Defendants' actions denied; and (v) whether Edwards-Flynn's constitutional-conspiracy allegation fails to state a claim. Because the Court finds that the Defendants on this motion were not governmental entities or state actors, the Court will dismiss all claims against them for constitutional violations. Because all of Edwards-Flynn's claims against the Defendants on this motion are constitutional claims, the Court will dismiss all claims against these Defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

The Defendants removed Edwards-Flynn's action from state court, contending that she was attempting to state claims for violation of her federal constitutional rights under § 1983, thereby giving this Court original jurisdiction over her claims and entitling them to the right of removal under 28 U.S.C. § 1441(b). The Court set forth Edwards-Flynn's factual allegations against the City Defendants in its previous Memorandum Opinion and Order at 2-4, entered March 9, 2009 (Doc. 56)("MOO"). As relevant to this motion, Flynn has named as Defendants in her lawsuit the New Mexico Self-Insurers' Fund ("The Fund"), which insures the City of Las Vegas, the New Mexico Municipal League ("The League"), which organized and administers the Fund, and two employees of the Fund. Those two employees are Eric Letey, a Claims Examiner, and Ed Zendel, the Risk Services Director at the Fund. See Complaint ¶¶ 73-74, at 35, filed February 20, 2008 (Doc. 1-3).[1]

---

[1] The Court will refer to these Defendants collectively as "Defendants." Thus, when the Court refers to "Defendants," in this Memorandum Opinion and Order, it should be understood that

Flynn alleges that, on June 9, 2006, Letey sent her a letter informing her that it had reviewed the charges she had raised against the City Defendants, and had determined that she had not suffered any violations of her civil rights and that the Fund had "denied her claim." Complaint ¶ 75, at 35-36.

Edwards-Flynn maintains that she sent three separate letters to Letey, with copies to Zendel, setting forth "lawful notification, that if the recipients failed to rebut, in writing, to plaintiff, any of the charges made in plaintiff's written communications to them, then, they admit to all of plaintiff's charges, contained therein, fully binding upon them in any court, without their protest . . . ." Id. ¶ 81, at 38. Flynn alleges that Letey and Zendel, whose acts she maintains bind the League and the Fund, failed to rebut her charges and are thus bound to them in court. See id. ¶¶74, 81, at 35, 38.

Flynn accuses Letey and Zendel of violating numerous state and federal constitutional provisions and of depriving her of her constitutional rights. The constitutional provisions Flynn alleges were violated are: (i) Art. XX, § 1, Art. II, §§ 2,3,4, and 8, Art. VII, § 2, and Art. IV, § 25 of the New Mexico Constitution;(ii) Art. VI, clauses 2 and 3, Sections 3 and 4 of the Fourteenth Amendment to the United States Constitution; and (iii) the Equal-Protection and Due-Process clauses of the New Mexico and United States Constitutions. See Complaint ¶ 82-84, at 39-40.

As factual support for the alleged constitutional violations, Flynn states that Letey and Zendel, on behalf of the Fund: (i) violated their oaths to uphold and support the constitutions, see Complaint ¶ 82, at 39; (ii) contacted Flynn, and which contact, coupled with the Fund's direct financial interest in protecting its client, the City of Las Vegas, from liability, suggests "it is entirely possible" that the Fund conspired with the City Defendants to defraud Edwards-Flynn by

---

the word includes only the Defendants included in this motion.

representing to her that she did not suffer a violation of her civil rights, id. ¶ 73; and (iii) denied her claims against the City – even though she did not present a claim to the Fund – in violation of her rights to due process, see id. ¶ 86, at 41.  Edwards-Flynn has also made some generalized accusations that Letey and Zendel were in dereliction of their duty, and that they violated NMSA 1978 § 10-16-3A-B.  See Complaint ¶ 82, at 39.  NMSA 1978 § 10-16-3A & B states:

> A legislator, public officer or employee shall treat the legislator's, public officer's or employee's government position as a public trust. The legislator, public officer or employee shall use the powers and resources of public office only to advance the public interest and not to obtain personal benefits or pursue private interests incompatible with the public interest.
>
> B. Legislators, public officers and employees shall conduct themselves in a manner that justifies the confidence placed in them by the people, at all times maintaining the integrity and discharging ethically the high responsibilities of public service.

NMSA 1978 § 10-16-3A & B .

Although Edwards-Flynn contended in her motions for remand that she was not bringing claims under § 1983 and pointed out that she had never cited § 1983 as a basis for recovery of damages in her Complaint, the Court noted that Edwards-Flynn was "trying to avoid federal-question jurisdiction," and held that, "even though she did not expressly mention § 1983, Edwards-Flynn has set forth a complaint that, in substances, alleges a § 1983 cause of action" for violation of her federal constitutional rights.  MOO at 16.  The Court thus adopted the Defendants' position that it should construe Edwards-Flynn's Complaint as one for violation of her federal constitutional rights under § 1983 and deny Edwards-Flynn's motion to remand.  In summary, the Court held that, "[b]ecause the Complaint alleges that Yara's possibly intentional failure to follow state laws regarding candidacy for public office violated Edwards-Flynn's federal constitutional right to fairly run for public office, even though she did not formally bring a claim under any federal statute, the face of the Complaint affirmatively states a substantial federal question that gives this Court original

subject-matter jurisdiction over her claims." Id. at 16-17.

## STANDARDS FOR DECIDING A MOTION TO DISMISS

A complaint does not require "detailed factual allegations," but the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)(internal quotation marks and bracket omitted). A complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." Id. at 1974. In resolving a motion to dismiss brought under rule 12(b)(6), the court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965 (internal quotation marks omitted).

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [Bell Atl. Corp. v. Twombly, 127 S Ct.] at 1974. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d at 1247.

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [Bell Atl. Corp. v. Twombly, 127 S. Ct.] at 1965 n. 3. *See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*

Robbins v. Oklahoma, 519 F.3d at 1248.  Complaints in § 1983 actions subject to qualified-immunity defenses

> must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated the [plaintiff's] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made.
>
> * * * *
>
> [C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.  The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S. Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

Robbins v. Oklahoma, 519 F.3d at 1249 (internal quotation marks and citations omitted).  Further, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based," even in a complaint prepared by a pro se plaintiff.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  But "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," which

> means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

Id.

## LAW REGARDING STATE ACTION AND CIVIL-RIGHTS CLAIMS

"As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments." Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982).  To state

a cause of action under 42 U.S.C. §§ 1983 and 1986 for alleged constitutional violations, the challenged conduct must constitute state action. See Lugar v. Edmondson Oil Co., 457 U.S. at 935; Johnson v. Rodrigues (Orozco), 293 F.3d 1196, 1202 (10th Cir. 2002). A plaintiff is required to show that: (i) he or she has been deprived of a right that the Constitution or laws of the United States protect; and (ii) that the putative state actor deprived him or her of the constitutional right while acting under color of any statute. See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978).

The Supreme Court of the United States has articulated four different tests for courts to use in determining whether conduct by an otherwise private party is state action: (i) the private-function test; (ii) the nexus test; (iii) the joint-action test; and (iv) the symbiotic-relationship test. See Johnson v. Rodrigues (Orozco), 293 F.3d at 1202-1203 (reviewing the various tests); Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995)(noting that "[a]pplication of the state action doctrine has been characterized as one of the more slippery and troublesome areas of civil rights litigation.")(internal quotations omitted).

Under the public-function test, a court determines whether a private party has exercised "powers traditionally exclusively reserved to the State." Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974). These powers include holding elections, performing necessary municipal functions, and running a nursing facility. See Johnson v. Rodrigues (Orozco), 293 F.3d at 1203. Although the state may engage in administering loans and securing debts, it is not an area exclusively reserved to the state. See Barrios-Velazquez v. Ass'n de Empleados del Estado Libre Associado, 84 F.3d 487, 494 (1st Cir. 1996)(holding that providing loans, insurance, and medical service do not constitute state action, because those services are not the exclusive province of the State).

A court determines under the nexus test whether there is a sufficiently close nexus between

the state and the challenged conduct, such that the conduct "may be fairly treated as that of the state itself." Jackson v. Metro. Edison Co., 419 U.S. at 351. A state may be held responsible for private conduct, only if the state "has exercised coercive power or has provided significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982). "Private use of state-sanctioned private remedies or procedures does not rise to the level of state action. . . . But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." Tulsa Professional Collection Servs, Inc. v. Pope, 485 U.S. 478, 486 (1988)(internal citations omitted).

State action exists under the joint-action test if the private party is a "willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980). Courts look to "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1453. "[I]f there is a substantial degree of cooperative action between state and private officials . . . or if there is overt and significant state participation, in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." Id. at 1454 (internal quotations and citations omitted).

Under the symbiotic-relationship test, state action is present if the state "has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." Burton v. Wilmington Parking Authority, 365 U.S. 715, 862 (1961). "[E]xtensive regulation, receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the [state] and a private [party] that is required for state action." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1451.

In Fries v. Helsper, 146 F.3d 452 (7th Cir. 1998), the plaintiff brought a § 1983 action

alleging that various law firms and individuals conspired to obtain dismissal of his state court complaint without due process of law. See id. at 452-53. The plaintiff "included only . . . conclusory allegations that the defendants conspired with [the] Judge . . . and influenced his decisions." Id. at 458. Nevertheless "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." Id. at 458. In addition, the plaintiff was unclear in his complaint "how the defendants' conduct was connected to [the] Judge['s] . . . alleged failure to act on some of the motions and, as a result, qualified as state action." Id. The United States Court of Appeals for the Seventh Circuit held that the plaintiff failed to demonstrate that the defendants acted under color of law when "[n]othing in the complaint demonstrate[d] the existence of any joint action, concerted effort, or even a general understanding between [the] Judge . . . and the defendants." Id.

In Shelley v. Kraemer, 334 U.S. 1 (1948), the Supreme Court noted: "That the action of state courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of this Court." Id. at 14. The Supreme Court held that the state courts' enforcement of racially restrictive covenant agreements was state action. See id. at 13-14, 19. The Supreme Court explained:

> These are not cases . . . in which the States have merely abstained from action, leaving private individuals free to impose such discriminations as they see fit. Rather, these are cases in which the States have made available to such individuals the full coercive power of government to deny to petitioners, on the grounds of race or color, the enjoyment of property rights in premises which petitioners are willing and financially able to acquire and which the grantors are willing to sell. The difference between judicial enforcement and nonenforcement of the restrictive covenants is the difference between . . . being denied rights of property available to other members of the community and being accorded full enjoyment of those rights on an equal footing.

Id. at 19. 3.

New Mexico courts treat state-action determinations in a similar fashion to federal courts. The New Mexico Court of Appeals has stated: "The general rule is that constitutional guarantees of individual liberty apply to the actions undertaken by the state (a person acting under color of state law, *see* 42 U.S.C. § 1983), and not to the actions undertaken by private persons and entities." Duran v. New Mexico Monitored Treatment Program, 128 N.M. 659, 664, 996 P.2d 922, 927 (Ct. App. 2000).

## THE NEW MEXICO TORT CLAIMS ACT

The New Mexico Tort Claims Act ("NMTCA") was enacted because the "legislature recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity." NMSA 1978 § 41-4-2(A). The New Mexico Legislature, however, also recognized "that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done." NMSA 1978 § 41-4-2(A). As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act." NMSA 1978 § 41-4-2(A). The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." NMSA 1978 § 41-4-2(C).

The NMTCA is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a

governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim." NMSA 1978 § 41-4-17(A). A governmental entity of New Mexico may not be sued unless the plaintiff's cause of action fits within one of the exceptions granted to governmental entities and public employees in the NMTCA. See Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985), rev'd on other grounds by Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986). "Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act." Id. (internal quotation marks omitted). Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint must be dismissed. See id.

  A plaintiff may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity. "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." Barreras v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 62 P.3d 770, 776. See Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 11, 952 P.2d 474, 477 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution unless immunity is waived under the NMTCA); Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. 446, 449, 744 P.2d 919, 922 (Ct. App. 1987)(holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board.); Begay v. State, 104 N.M. at 488, 723 P.2d at 257 (finding that no waiver existed in NMTCA for suit under Article II, § 11 of the New Mexico Constitution).

  In Seeds v. Lucero, 137 N.M. 589, 113 P.3d 859 (Ct. App. 2005), the New Mexico Court of Appeals held that city officials' "utilizing the machinery of city government" against private

individuals for personal motives is covered by the NMTCA. 137 N.M. at 593, 113 P.3d at 863. In Vigil v. State Auditor's Office, 138 N.M. 63, 116 P.3d 854 (Ct. App. 2005), the Court of Appeals held that the a state auditor conducting audits in violation of statute, and making false audits, is covered by the NMTCA. See 138 N.M. at 68, 116 P.3d at 859. And in Henning v. Rounds, 142 N.M. 803, 171 P.3d 317 (Ct. App. 2007), the New Mexico Court of Appeals held that a principal's allegedly false and misleading comments and evaluations of a teacher were actions committed within the scope of duty. See 142 N.M. at 806-08, 171 P.3d at 320-22.

## ANALYSIS

The Court concludes that Edwards-Flynn has not stated viable claims against Letey, Zendel, the Fund, or the League. All of her claims against these actors, fairly culled from the Complaint, are for violations of her state and federal constitutional rights, either through negligent or intentional activity. These Defendants, however, are not governmental entities. To state a cause of action under 42 U.S.C. §§ 1983 and 1986 for alleged constitutional violations, the challenged conduct must constitute state action. See Lugar v. Edmondson Oil Co., 457 U.S. at 935; Johnson v. Rodrigues (Orozco), 293 F.3d at 1202. A plaintiff is required to show that: (i) he or she has been deprived of a right that the Constitution or laws of the United States protects; and (ii) that the putative state actor deprived him or her of the constitutional right while acting under color of any statute. See Flagg Bros., Inc. v. Brooks, 436 U.S. at 156. The New Mexico Court of Appeals has also stated: "The general rule is that constitutional guarantees of individual liberty apply to the actions undertaken by the state (a person acting under color of state law, *see* 42 U.S.C. § 1983), and not to the actions undertaken by private persons and entities." Duran v. New Mexico Monitored Treatment Program, 128 N.M. at 664, 996 P.2d at 927.

Edwards-Flynn has not shown that Letey, Zendel, the Fund, or the League meet any of the

tests under which a non-governmental entity might be treated as a state actor liable for constitutional violations.

## I.   THE DEFENDANTS' CONDUCT IS NOT STATE ACTION UNDER THE PRIVATE-FUNCTION TEST.

The function the Defendants carried out in this case – insuring the City against liability – are not "powers traditionally exclusively reserved to the State." Jackson v. Metro. Edison Co., 419 U.S. at 352. Powers traditionally meeting this test include holding elections, performing necessary municipal functions, and running a nursing facility. See Johnson v. Rodrigues (Orozco), 293 F.3d at 1203. In Barrios-Velasquez v. Asociacion de Empleados Del Estado Libre Asociado de Puerto Rico, 84 F.3d 487 (1st Cir. 1996), the United States Court of Appeals for the First Circuit explained that providing loans, insurance, and medical services are not "the exclusive province of the State, since banks, credit unions, savings and loan associations, brokerage firms, mutual funds, and insurance companies have existed to promote savings, loans and health and other insurance." Id. at 494. The Court cannot properly say that providing insurance coverage is an activity that meets the public-function test. The Tenth Circuit has said that it is an arduous task to meet the public-function test. See Johnson v. Rodrigues (Orozco), 293 F.3d at 1203. That test is not met here.

## II.   THE DEFENDANTS' CONDUCT IS NOT STATE ACTION UNDER THE NEXUS TEST.

Edwards-Flynn has not demonstrated that the Defendants had a sufficiently close nexus to the State such that their conduct "may be fairly treated as that of the state itself." Jackson v. Metro. Edison Co., 419 U.S. at 351. Although Edwards-Flynn states that "it is entirely possible" that there was some collusion or conspiracy between the Defendants and the City Defendants, she does not allege facts that would suggest such a conspiracy such that there is a link between state actors and the Defendants on this motion. Nor does Edwards-Flynn allege that the State "exercised coercive

power or has provided significant encouragement, either overt or covert" to the Defendants. Blum v. Yaretsky, 457 U.S. at 1004. Again, she points out that there is an interest on the part of the Fund in shielding the City Defendants from Liability, but she sets forth no facts that would give rise to an inference of state action.

## III. THE DEFENDANTS' CONDUCT IS NOT STATE ACTION UNDER THE JOINT-ACTION TEST.

Edwards-Flynn has not shown that there is joint action. State action exists under the joint-action test if the private party is a "willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980). Courts look to "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1453. "[I]f there is a substantial degree of cooperative action between state and private officials . . . or if there is overt and significant state participation, in carrying out the deprivation of the plaintiff's constitutional rights, state action is present." Id. at 1454 (internal quotations and citations omitted). Here, there is no showing of cooperation between the City and its insurer. Rather, based on the Complaint, the City appears to have apprised its insurer of Edwards-Flynn's allegations of conduct in which the none of the Defendants were involved, and the insurer then performed the function it is accustomed to performing: it assessed the possible liability that the City faced and determined that there was likely none. The Fund, as the insurer, then notified Edwards-Flynn of its assessment.

Edwards-Flynn does not articulate any activity that the City Defendants and the Defendants carried out together to deprive her of rights. On the one hand, Edwards-Flynn contends that the City Defendants committed errors – or, as she alleges in some parts of her Complaint, felonies – which caused her not to be able to run for elected office. She then contends that the Defendants, through

their capacity as insurer and employees, sent a letter to her saying she did not have a meritorious claim against the City Defendants. Edwards-Flynn's conclusory hypothesis that the Fund and the City have a client-relationship which might induce them to act in each other's interests to her detriment is not sufficient to show joint action. Given that, at their heart, Edwards-Flynn's claims arise out of mistakes that were made before Fund was apprised of anything, and that the Fund's activity consisted of notifying her it would not pay out a claim, there is no reasonable allegation in the Complaint that the City Defendants and the Fund acted in concert with the Fund to do anything. At worst, the City Defendants and the Fund both alleged, in concert, that Edwards-Flynn did not have a claim. Such a communication does not implicate any state action that deprived Edwards-Flynn of any interest.

## IV. THE DEFENDANTS' CONDUCT IS NOT STATE ACTION UNDER THE SYMBIOTIC RELATIONSHIP TEST.

Edwards-Flynn has insinuated that the City Defendants and the Fund have a mutual interest in denying her the ability to recover. She points to a client relationship to support this suggestion. The relationship between an insured and insurer, however, is more complex than she alleges. To show a symbiotic relationship – or any other relationship that would suggest it is proper to impute state action to the routine assessment that was made in this case to what appeared to the insurer to be a non-meritorious claim, Edwards-Flynn must show that the State "has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." Burton v. Wilmington Parking Authority, 365 U.S. 715, 862 (1961). Similar to the analysis under the joint-participant test, the Complaint does not support the notion that the City Defendants and these Defendants committed acts together that deprived Edwards-Flynn of a constitutional right.

It is true that the municipalities that belong to the League pay the premiums to the Fund, and that such a situation ties the two together. Nevertheless, "extensive regulation, receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the [state] and a private [party] that is required for state action." Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1451.

In conclusion, the Court finds that there was no state action on the part of the Defendants who brought this motion. The Court has construed the Complaint in the most fair light and determined that the only claims it raises against the Defendants are constitutional. Because all of the claims against the Defendants are constitutional, and because the Defendants are not state actors, the Court will dismiss Edwards-Flynn's claims against them. If Edwards-Flynn believes she has stated any claims that are not based in the state or federal constitutions, she may reapproach the Court on that issue. Otherwise, the Court dismisses her claims against the Defendants.

**IT IS ORDERED** that Defendants Eric Letey, Ed Zendel, New Mexico Self-Insurer's Fund, and New Mexico Municipal League's Motion to Dismiss Plaintiff's Claims in their Entirety is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

Margaret D. Edwards-Flynn
Las Vegas, New Mexico

> *Pro Se Plaintiff*

Tony F. Ortiz
Christopher M. Grimmer
Scheuer, Yost & Patterson, P.C.
Santa Fe, New Mexico

> *Attorneys for Defendants Cheryl Ann Yara, Matthew Sandoval, Henry O. Sanchez, John Avila, Chuck Griego, Michael Gallegos, Macario Gonzales, Morris Madrid, Diane Moore, Tony Marquez, Eugene Romero, Cruz Roybal, and Louie Trujillo*

Michael W. Brennan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

> *Attorneys for Defendants Eric Letey, Ed Zendel, New Mexico Self-Insurers' Fund, and New Mexico Municipal League*