## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARGARET D. EDWARDS-FLYNN,

      Plaintiff,

vs.                                                                 No. CIV 08-0186 JB/ACT

CHERYL ANN YARA; MATTHEW SANDOVAL;
HENRY O. SANCHEZ; JOHN AVILA; CHUCK
GRIEGO; MICHAEL GALLEGOS; MACARIO
GONZALES; MORRIS MADRID; DIANE MOORE;
TONY MARQUES; EUGENE ROMERO; CRUZ
ROYBAL; AND LOUIE TRUJILLO, all in their
individual, personal, private and official capacities,
for actions committed while acting as public officers
and/or employees of the Machinery of Government of
the City of Las Vegas, New Mexico; and ERIC LETEY
and ED ZENDEL, each in their individual, personal,
private and official capacities, for actions committed
while acting as employees of the New Mexico Municipal
League, by and through the New Mexico Self-Insurers'
Fund; THE NEW MEXICO SELF-INSURERS' FUND;
THE NEW MEXICO MUNICIPAL LEAGUE;
FIFTEEN JANE DOES; and FIFTEEN JOHN DOES,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (i) the City Defendants' Motion to Dismiss

Plaintiff's Claims in their Entirety, filed September 4, 2008 (Doc. 34), and on (ii) Plaintiff Margaret

D. Edwards-Flynn's Motion to Strike Defendants' Motion to dismiss filed September 4, 2008, filed

September 19, 2008 (Doc. 37).  The primary issues are (i) whether Plaintiff Margaret D. Edwards-

Flynn's Complaint states a cognizable claim for violation of her constitutional rights; and (ii)

whether Edwards-Flynn's state-law claims are barred by sovereign immunity as provided by the

New Mexico Tort Claims Act ("NMTCA"), N.M.S.A. 1978, §§ 41-4-2 through 41-4-27.   The City

Defendants are: Morris Madrid, Diane Moore, Tony Marquez, Eugene Romero, Cruz Roybal, Louie Trujillo, Cheryl Ann Yara, Matthew Sandoval, Henry O. Sanchez, John Avila, Chuck Griego, Michael Gallegos, and Macario Gonzales.  See Doc. 34 at 1.  Because the Court concludes that Edwards-Flynn has stated a claim for retaliation in violation of her First Amendment right to political association under 42 U.S.C. § 1983 against City Defendant Cheryl Ann Yara, the Court will deny the City Defendants' motion to dismiss in part.  Because Edwards-Flynn has failed to state a cognizable claim under § 1983 against City Defendants Morris Madrid, Diane Moore, Tony Marquez, Eugene Romero, Cruz Roybal, Louie Trujillo, Matthew Sandoval, Henry O. Sanchez, John Avila, Chuck Griego, Michael Gallegos, and Macario Gonzales, and because the doctrine of sovereign immunity bars her state-law claims against them, the Court will grant the motion in part and dismiss all claims against these City Defendants.

## PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

The Defendants removed Edwards-Flynn's action from state court, contending that she was attempting to state claims for violation of her federal constitutional rights under § 1983, thereby giving this Court original jurisdiction over her claims and entitling them to the right of removal under 28 U.S.C. § 1441(b).  The Court set forth Edwards-Flynn's factual allegations against the City Defendants in its previous Memorandum Opinion and Order.

> Edwards-Flynn contends that Defendant Cheryl Ann Yara, who was the city clerk for the city of Las Vegas, New Mexico, incorrectly certified Edwards-Flynn to run for office as a city councilor in the wrong ward in January 2006, and that the City then failed to "timely correct its alleged mistake," which "interfered with [her] Constitutionally guaranteed right to run for public office" and "the Peoples' Constitutionally guaranteed Right to vote for their candidate in the proper ward" and with her "ability to maintain office, if elected."  Id. [Complaint] ¶ 30, at 13; id. at 2-3.  She states that she "seeks relief for deprivation of said Rights" by the Defendants. Id. ¶ 22, at 10.  She purports to "base[] all her . . . charges in fact and law . . . in the paramount authority of the Constitution of the United States of America."  Id. ¶ 23, at 10.

2

Edwards-Flynn's first cause of action is against Yara for "defraud[ing Plaintiff] of her Rights." Id. ¶ 26, at 11. Edwards-Flynn contends that Yara "betrayed her office and the Public Trust, acted in negligence of office, in dereliction of duty, in malfeasance of office, obstructed justice, acted in violation of due process of law, and perjured her oath." Id. Edwards-Flynn alleges that Yara's actions in giving her incorrect information about in which ward she resided violated several sections of the New Mexico Municipal Election Code, see id. ¶¶ 36-38, at 17-18, deprived . . . [her] of Rights guaranteed to her in the federal and state Constitutions, under which she is entitled to participate in a fair election," id. ¶ 39, at 18; and violated the New Mexico Constitution, see id. ¶ 43, at 20.

Edwards-Flynn's second cause of action is against Matthew Sandoval, who served as the city of Las Vegas' attorney when it unsuccessfully brought a declaratory judgment action in state court in February 2006 to attempt to remove her from the city-councilor ballot. She alleges that, by bringing the suit, Sandoval "betrayed his office and the Public Trust, acted in negligence of office, in dereliction of duty, in malfeasance of office, obstructed justice, and perjured his oath," thereby "defraud[ing] Plaintiff of her Rights" under "the Constitutions" and violating "due process of law." Id. ¶ 47, at 21. She contends that Sandoval's actions violated the federal and New Mexico Constitutions, New Mexico statues, and the New Mexico Rules of attorney conduct. See id. ¶ 51, at 22-23.

In Count Three of her Complaint, Edwards-Flynn contends that Las Vegas Mayor Henry O. Sanchez failed to investigate her May, 2006 complaints against Yara and Sandoval, or to take disciplinary action against them, and that, therefore, he must have been conspiring with them to "shield Yara and the City from Yara's alleged errors." Id. ¶¶ 54-55, at 24-25. She contends that Sanchez' failure to act violated his oath under the federal and New Mexico Constitutions and violated due process, and also violated several New Mexico statutes, thereby defrauding her of her rights. See id. ¶ 56, at 26.

Count Four names John Avila and Chuck Griego, who were the Las Vegas city manager and communications officer, respectively, as Defendants. See id. ¶ 59, at 27. She contends that they failed to respond to her May 2006 complaints about Yara's and Sandoval's behavior, thereby implicitly upholding the due-process violations and fraud. See id. at 28, ¶ 60.

Plaintiff's Fifth cause of action is against all of the Las Vegas city councilors. See id. ¶ 63, at 29. She contends that, after she notified the councilors of Yara's and Sandoval's behavior in July 2006, they failed to investigate or to "urge the mayor to take . . . disciplinary action" against them, thereby upholding the constitutional violations and also violating their constitutional oaths. See id. ¶¶ 63-64, at 29-30.

In her Sixth cause of action, Edwards-Flynn contends that all of the City Defendants' failures to respond to or rebut her complaints violated the New Mexico

3

Constitution's mandate that "no law shall be enacted legalizing the authorized [sic] or invalid act of any officer." Id. ¶ 68, at 32. She also contends that their lack of response violates the federal Constitution in some unspecified way. See id. ¶ 70, at 33-34.

Memorandum Opinion and Order at 2-4, entered March 9, 2009 (Doc. 56). Although Edwards-Flynn vigorously contended in her motions for remand that she was not bringing claims under § 1983 and pointed out that she had never cited § 1983 as a basis for recovery of damages in her Complaint, the Court concluded that Edwards-Flynn was "trying to avoid federal-question jurisdiction" and held that, "even though she did not expressly mention § 1983, Edwards-Flynn has set forth a Complaint that, in substance, alleges a § 1983 cause of action" for violation of her federal constitutional rights. Memorandum Opinion and Order at 16. The Court thus adopted the Defendants' position that it should construe Edwards-Flynn's Complaint as one for violation of her federal constitutional rights under § 1983 and deny Edwards-Flynn's motion to remand. In summary, the Court held that, "[b]ecause the Complaint alleges that Yara's possibly intentional failure to follow state laws regarding candidacy for public office violated Edwards-Flynn's federal constitutional right to fairly run for public office, even though she did not formally bring a claim under any federal statute, the face of the Complaint affirmatively states a substantial federal question that gives this Court original subject-matter jurisdiction over her claims." Memorandum Opinion and Order at 16-17.

Before the Court had ruled on Edwards-Flynn's motions for remand, the City Defendants filed this motion to dismiss. Edwards-Flynn contends that the motion should be stricken because the Defendants improperly removed the case from state court by failing to establish federal-subject-matter jurisdiction, and because the Court had not ruled on her motion to remand and lacked jurisdiction to rule on the merits of the motion. See Doc. 37 at 1-2.

4

## STANDARDS FOR DECIDING A MOTION TO DISMISS

A complaint does not require "detailed factual allegations," but the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)(internal quotation marks and bracket omitted). A complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." Id. at 1974. In resolving a motion to dismiss brought under rule 12(b)(6), the court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965 (internal quotation marks omitted).

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [Bell Atl. Corp. v. Twombly, 127 S Ct.] at 1974. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d at 1247.

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [Bell Atl. Corp. v. Twombly, 127 S. Ct.] at 1965 n. 3. See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The Twombly Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." Id.

Robbins v. Oklahoma, 519 F.3d at 1248. Complaints in § 1983 actions subject to qualified-

5

immunity defenses

> must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated the [plaintiff's] constitutional rights, and that those rights were clearly established at the time.  This requires enough allegations to give the defendants notice of the theory under which their claim is made.
>
> * * * *
>
> [C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants.  The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation.  Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S. Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

Robbins v. Oklahoma, 519 F.3d at 1249 (internal quotation marks and citations omitted).  Further, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based," even in a complaint prepared by a pro se plaintiff.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  But "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," which "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  Id.

## LAW REGARDING THE CONSTITUTIONAL RIGHT TO RUN FOR PUBLIC OFFICE

The Supreme Court of the United States has held that the "privileges and immunities clause [of the Fourteenth Amendment] includes [only] those rights and privileges incident to citizenship of the United States, but does not include rights pertaining to state citizenship derived solely from

the relationship of the citizen and his state established by state laws."   Snowden v. Hughes, 321

U.S. 1, 6-7 (1944).  Thus, because the "right to become a candidate for state office, like the right to

vote for the election of state officers . . . is a right or privilege of state citizenship, not of national

citizenship," it is not protected by the privileges and immunities clause.  Snowden v. Hughes, 321

U.S. at 7.  Further, "an unlawful denial by state action of the right to a state political office is not a

denial of a right of property or of liberty secured by the due process clause of the Fourteenth

Amendment," and therefore is not protected by the due process clause.  Snowden v. Hughes, 321

U.S. at 7.  And the failure of a state or its officers to follow state law in allowing specific individuals

to "be a candidate for and to be elected to public office upon receiving a sufficient number of votes"

is not protected by the equal protection clause of the Fourteenth Amendment "absent allegations of

intentional or purposeful discrimination" between classes of persons.  Snowden v. Hughes, 321 U.S.

at 7.

      Thus, while the right to hold a particular political office is not a constitutionally protected

property or liberty interest, see id., the right to fairly run for political office without being

discriminated against based upon political beliefs or associations is protected by the First

Amendment and the equal protection clause of the Fourteenth Amendment, see Ill. State Bd. of

Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979)(holding that the state must have a

compelling state interest to restrict ballot access by statutory requirements because, "[b]y limiting

the choices available to voters, the State impairs the voters' ability to express their political

preferences").  Thus, allegations that a state officer or agency purposefully kept a candidate from

running for public office by violating state election laws or imposing discriminatory ballot

restrictions because the officer disagreed with the candidate's political views states a cause of action

for violation of the First Amendment and of the equal-protection component of the Fourteenth

Amendment.  See Anderson v. Celebrezze, 460 U.S. 780, 786-87 n.7 & n.8 (1983)(noting that in previous election cases, "applying the 'fundamental rights' strand of equal protection analysis, [the Supreme Court had] identified the First and Fourteenth Amendment rights implicated by restrictions on the eligibility of voters and candidates").

## LIABILITY UNDER § 1983

"It has long been clearly established that the First Amendment bars retaliation for protected speech and [political] association."  MIMICS, Inc. v. Village of Angel Fire, 394 F.3d 836, 848 (10th Cir. 2005).

> An act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper.  A First Amendment retaliation claim such as this requires proof
>
> > (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

Id. at 847 (quoting Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000))(further quotation marks and citation omitted).  Under

> [t]he statute that provides a remedy for constitutional violations committed by state officials, 42 U.S.C. § 1983, . . .  liability attaches only to conduct occurring "under color of law."  Thus, the only proper defendants in a Section 1983 claim are those who  represent the state in some capacity, whether they act in accordance with their authority or misuse it.

Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1447 (10th Cir. 1995) (internal quotation marks and bracket omitted).

When city officials like a mayor or city-council member are sued for alleged violation of federal constitutional rights, however, to be liable in their individual capacities, they must

8

"personally participate in the event" causing the violation.  <u>Spencer v. Landrith</u>, No. 07-6234, 2009 WL 468291, *2 (10th Cir. 2009); <u>Bettis v. Bickel</u>, 08-7079, 2009 WL 214728, *2 (10th Cir. 2009)(holding that, when a plaintiff contends that "a city councilman, as supervisory personnel, [is] responsible for the problems [at the city facility], '[a] supervisor can . . . be held liable if the supervisor expressly authorized, supervised, or participated in conduct which caused the constitutional deprivation.'")(quoting <u>Bruner v. Baker</u>, 506 F.3d 1021, 1026 (10th Cir. 2007)). Further, "[t]he theory of negligent supervision cannot provide a basis for liability under § 1983." <u>Spencer v. Landrith</u>, 2009 WL 468291, *2 (citing <u>Darr v. Town of Telluride</u>, 495 F.3d 1243, 1256 (10th Cir. 2007)).

> Moreover, "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (quotation and citation omitted). "[I]t is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation."  *Id.*  Rather, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Id.* at 994-95 (quotations and citations omitted).
>
> And in the supervisors' official capacities, [the plaintiff] was required to demonstrate that his injuries were the result of a municipal "policy or custom." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1259 (10th Cir. 2007) ("A municipality cannot be held liable for its officers' actions under § 1983 unless those actions were caused by a policy or custom of the municipality."); *Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n. 2 (10th Cir.1998) (recognizing that suits against municipal officers acting in an official capacity are treated the same as those against a municipality).  A " 'custom' . . . mean[s] an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law."  *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003).

<u>Spencer v. Landrith</u>, 2009 WL 468291, at *3.


## THE NMTCA

The NMTCA was enacted because the New Mexico "legislature recognize[d] the inherently

unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity." N.M.S.A. 1978 § 41-4-2A. The "legislature also recognize[d] that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done." Id.  As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act . . . and in accordance with the principles established in that act." Id. § 41-4-2A.

The NMTCA, therefore, is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim." Id. § 41-4-17A.  A plaintiff may not sue "any public employee while acting within the scope of duty" "for any tort except as waived by Sections 41-4-5 through 41-4-12 NMSA 1978." Id. § 41-4-4A.   Thus, the NMTCA "delimits the scope of liability for government entities and their employees by:  (1) retaining immunity for torts not waived by the TCA, *see* Section 41-4-2A (1976); and (2) waiving immunity and recognizing liability, subject to certain protections, for employees acting within their scope of duty, *see* § 41-4-4 (1996)." Celaya v. Hall, 2004-NMSC-005, ¶ 8, 85 P.3d 239, 242 (2004).

"'Scope of duty' means performing any duties that a public employee is requested, required, or authorized to perform by the governmental entity, regardless of the time and place of performance."  N.M.S.A. 1978 § 41-4-3B.  "[A] public employee may be within the scope of authorized *duty* even if the employee's *acts* are fraudulent, intentionally malicious, or even

10

criminal."    Seeds v. Lucero, 2005-NMCA-067, 113 P.3d 859, 862 (Ct. App. 2005)(italics in original).    "[T]he TCA clearly contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity." Celaya v. Hall, 85 P.3d at 245.  "Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act." Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 256 (Ct. App. 1985), rev'd on other grounds by Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986). Thus, if "no specific waiver of immunity can be found in the [NMTCA]," the Court must dismiss a plaintiff's complaint.  See Begay v. State, 104 N.M. at 486, 723 P.2d at 256.

        "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." Barreras v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 62 P.3d 770, 776. (Ct. App. 2002).  See Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 11, 952 P.2d 474, 477 (Ct. App. 1997)(noting that a plaintiff "may not seek damages from the City for violations of state constitutional rights unless immunity is waived under the [NMTCA]"); Begay v. State, 104 N.M. at 488, 723 P.2d at 257 (holding that no waiver existed in the NMTCA for suit against public employees under Article II, § 11 of the New Mexico Constitution).   Thus, city officials "utilizing the machinery of city government" against private individuals for personal motives cannot be sued for money damages because there is no waiver of immunity for such acts in the NMTCA.  Seeds v. Lucero, 137 N.M. at 593, 113 P.3d at 863.  Similarly, in Vigil v. State Auditor's Office, 2005-NMCA-096, 138 N.M. 63, 116 P.3d 854 (Ct. App. 2005), the New Mexico Court of Appeals held that immunity protected a state auditor – who was conducting audits in violation of statute by making allegedly false audits – from liability for money damages by the NMTCA.  See Vigil v. State Auditor's Office, 138 N.M.

11

at 68, 116 P.3d at 859.

<u>ANALYSIS</u>

Edwards-Flynn has not stated a cause of action for violation of her federal constitutional rights under § 1983 against any City Defendant except for Yara.  Further, because the individual City Defendants, including Yara, were all acting within the scope of their duties with respect to Edwards-Flynn's state-constitution and state-election-code claims, and no exception applies, the NMTCA provides immunity for these claims to all of these City Defendants.  Accordingly, the Court will dismiss all claims against all City Defendants except for the § 1983 claim against Yara.

## I. EDWARDS-FLYNN HAS STATED A CAUSE OF ACTION FOR VIOLATION OF HER CONSTITUTIONAL RIGHTS AGAINST YARA.

The basis of the Court's determination that it has subject-matter jurisdiction over Edwards-Flynn's suit is that, even though she did not cite § 1983 as a basis for her right to relief, her Complaint alleges that Yara, a state actor, intentionally certified Edwards-Flynn to run for city councilor in the wrong ward because Yara did not agree with Edwards-Flynn's political views, thereby defeating Edwards-Flynn's ability to fairly run for public office in the correct ward, which violated her federal constitutional rights.  <u>See</u> March 9, 2009 Memorandum Opinion and Order at 16-17.  By alleging that (i) Edwards-Flynn was engaged in constitutionally protected political activity; (ii) Yara's intentional actions caused Edwards-Flynn to suffer an injury – preclusion from fairly running for public office – which would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) Yara's adverse action was substantially motivated as a response to Edwards-Flynn's exercise of her constitutionally protected right of political association, Edwards-Flynn has stated a cognizable claim for violation of § 1983.  <u>See</u> <u>Anderson v. Celebrezze</u>, 460 U.S. at 786-87 n.7 & n.8; <u>Snowden v. Hughes</u>, 321 U.S. at 7; <u>MIMICS, Inc. v. Village of Angel Fire</u>, 394

F.3d at 847.

The Defendants now contend that Edwards-Flynn failed to state a claim because she did not expressly mention § 1983 in the Complaint.

> Plaintiff has failed to state a viable claim for relief because the United States Constitution, standing alone, does not provide Plaintiff with the type of remedy (damages) that she seeks in her Complaint.  Stated simply, the Court should not permit claims to proceed where the Complaint fails to invoke any legal mechanism that would permit the type of relief requested by Plaintiff.

Motion to Dismiss at 2 (Doc. 34).  See City Defendants' Reply at 2 (Doc. 39)(stating that Edwards-Flynn "nowhere asserts Section 42 U.S.C. § 1983 as a jurisdictional basis for pursuit of her claims, which is required for the recovery of the monetary damages she has requested in this case," and that "Plaintiff failed to invoke Section 1983 in her Complaint, and thus, she excluded a required component for seeking damages").  Having convinced the Court that it should construe her Complaint as implying a cause of action under § 1983 so that they could remove it from state court, however, Defendants may not now urge dismissal of Edwards-Flynn's § 1983 claim solely because she failed to expressly cite the statute.

By concluding that Edwards-Flynn has stated a claim against Yara, however, the Court does not rule that Edwards-Flynn has met her ultimate burden of proving that Yara knew of Edwards-Flynn's political point of view, disagreed with it, and intentionally gave Edwards-Flynn erroneous information and deliberately certified her in the wrong ward.  The questions of Yara's knowledge and discriminatory intent are for summary judgment or for a jury.

## II.     EDWARDS-FLYNN FAILS TO STATE A CLAIM FOR VIOLATION OF § 1983 AGAINST SANDOVAL.

Edwards-Flynn's claims against Sandoval, Las Vegas' city attorney, rest on an entirely different ground.  She contends that, by admitting that Yara made a "mistake" in certifying

Edwards-Flynn as a candidate in the wrong ward but nevertheless bringing a declaratory judgment action in state court to attempt to remove Edwards-Flynn from the city-councilor ballot, Sandoval "defrauded Plaintiff of her Rights" under both the federal and state Constitutions by violating her right to "due process of law."  Complaint, ¶ 47 at 21; id. ¶ 51 at 22-23.  Edwards-Flynn had no statutory or constitutional right, however, to run for public office in the wrong ward and bringing the lawsuit to prevent Edwards-Flynn from running for office in an incorrect ward did not cause Edwards-Flynn's constitutional injury.  Yara's allegedly retaliatory act caused the injury to Edwards-Flynn's First Amendment right to fairly run for public office, and there is no claim that Sandoval participated in Yara's decision.  Edwards-Flynn, therefore, has not stated a claim for violation of her constitutional rights against Sandoval.  See Spencer v. Landrith, No. 07-6234, 2009 WL 468291, *2.

## III. EDWARDS-FLYNN HAS NOT STATED A CLAIM FOR VIOLATION OF HER FEDERAL CONSTITUTIONAL RIGHTS AGAINST ANY OTHER CITY DEFENDANT.

As with Sandoval, Edwards-Flynn does not allege that the remaining City Defendants played any part in Yara's decision to improperly certify her in Ward Two.  See Doc. 38 at ("[I]t was Yara's responsibility to correctly certify Flynn, not that of the other defendants").   She therefore may not seek to hold them accountable for Yara's alleged violation of her First-Amendment right to fairly run for public office.  See Spencer v. Landrith,  2009 WL 468291, *2.  Instead, Edwards-Flynn's claims against the remaining City Defendants are for their post-injury and post-election refusals to discipline Yara, or to somehow hold Yara "liable" for her failure to properly certify Edwards-Flynn.

Edwards-Flynn does not, however, have a statutory or constitutionally protected property or liberty interest in obtaining Yara's discipline or removal as city clerk, and no federal law provides citizens the right to discipline or remove city officials for alleged mistakes or even for intentional

14

erroneous acts with which the citizen is unhappy.  She, therefore, has not stated a claim for violation of her constitutional rights under § 1983.  See Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972)(stating that, to have a property interest in a benefit, the individual claiming the interest "must have more than a unilateral expectation of it.  [She] must, instead, have a legitimate claim of entitlement to it.").

## IV.   THERE IS NO WAIVER OF IMMUNITY FOR STATE-LAW CLAIMS AGAINST THE CITY DEFENDANTS BROUGHT UNDER THE NEW MEXICO CONSTITUTION OR ELECTION CODE.

The New Mexico courts have treated the questions whether there is a cause of action under the New Mexico Constitution and whether there is a waiver of immunity under the NMTCA as essentially the same question.  See, e.g., Barreras v. N. M. Corr. Dep't, 133 N.M. at 319, 62 P.3d at 776 ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the [NMTCA].").  Edwards-Flynn's Complaint alleges that all of the City Defendants, including Yara, are being sued for failing to perform official duties she believes they are obliged to perform.  The NMTCA grants public employees acting within the scope of their duties immunity from liability for tort claims, unless a particular exception applies.  See Celaya v. Hall, 85 P.3d at 242; N.M.S.A.1978 § 41-4-4A.  And there is no private cause of action for money damages to otherwise enforce the New Mexico Constitution against public employees.  See, e.g., Barreras v. N. M. Corr. Dep't, 133 N.M. at 319, 62 P.3d at 776; Chavez v. City of Albuquerque, 124 N.M. at 482, 952 P.2d at 477.

Edwards-Flynn has not pointed to any provision of the NMTCA waiving immunity for her claims under the New Mexico Constitution or the election code, nor has she cited any authority demonstrating that she has a private cause of action to enforce an alleged violation of the New

15

Mexico Constitution.  The NMTCA is the "exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived." N.M.S.A.1978 § 41-4-17A.  Edwards-Flynn's state-law claims for money damages for state-constitutional and election-code violations are therefore barred.  "Although the legislature cannot eliminate or limit a constitutional right, it need not provide a damage remedy for a violation of that right." Ford v. N. M. Dep't of Pub. Safety, 119 N.M. 405, 412, 891 P.2d 546, 553 (Ct. App. 1994).

In her response to the motion to dismiss, Edwards-Flynn generally contends that the City Defendants' defenses are "insufficient" as a matter of law because they have not rebutted her factual statements. Doc. 38 at 3-4.  Although the Defendants have admitted that Yara erroneously certified Edwards-Flynn in the wrong ward and do not rebut her allegation that they did not respond to her communications demanding Yara's discipline and removal, those facts alone do not establish the elements of a prima facie case either for violation of Yara's constitutional rights or for recovery under New Mexico law for state-law violations.

Edwards-Flynn also contends that she has brought no claims under the "United States Constitution," but, rather, that she has invoked "the authentic original 1791 Constitution of the United States of America, inclusive of the Bill of Rights," Doc. 38 at 7, which is a non-existent distinction without a difference.  She also contends that the Defendants have misrepresented the "nature and substance" of her claims in their motion to dismiss by "inventing claims" under § 1983 that are not in her Complaint.  Doc. 37 at 6.  Her contentions do not change the Court's analysis. Whether Edwards-Flynn intended to bring claims involving alleged violation of her federal constitutional rights against the City Defendants under § 1983, her Complaint requested $1,500,000 in money damages against the Defendants for "deprivation of constitutionally guaranteed rights," *see* Complaint at 1, 44, and the Court concludes that she has not stated a cognizable claim for such

16

damages except against Yara.  And because she has not shown any waiver of immunity for violations of the New Mexico Constitution, or for violation of the state election codes, all of the City Defendants, including Yara, are entitled to dismissal of Edwards-Flynn's state-constitution and election-code claims.

**IT IS ORDERED THAT** the City Defendants' Motion to Dismiss (Doc. 34) is granted in part and denied in part.  All claims against Morris Madrid, Diane Moore, Tony Marquez, Eugene Romero, Cruz Roybal, Louie Trujillo, Matthew Sandoval, Henry O. Sanchez, John Avila, Chuck Griego, Michael Gallegos, and Macario Gonzales are dismissed.  The request to dismiss Plaintiff Margaret D. Edwards-Flynn's § 1983 claim against Cheryl Ann Yara for violation of her First-Amendment right to fairly run for public office is denied, and Edwards-Flynn's Motion to Strike (Doc. 37) is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and Parties*:

Margaret D. Edwards-Flynn
Las Vegas, New Mexico

     *Pro Se Plaintiff*

Tony F. Ortiz
Christopher M. Grimmer
Scheuer, Yost & Patterson, P.C.
Santa Fe, New Mexico

     *Attorneys for Defendants Cheryl Ann Yara, Matthew Sandoval, Henry O. Sanchez, John Avila, Chuck Griego, Michael Gallegos, Macario Gonzales, Morris Madrid, Diane Moore, Tony Marquez, Eugene Romero, Cruz Roybal, and Louie Trujillo*

Michael W. Brennan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

*Attorneys for Defendants Eric Letey, Ed Zendel, New Mexico Self-Insurers' Fund, and*
  *New Mexico Municipal League*