# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MARGARET D. EDWARDS-FLYNN,

     Plaintiff,

vs.                                                                                    No. CIV. 08-0186 JB/ACT

CHERYL ANN YARA; MATTHEW SANDOVAL;
HENRY O. SANCHEZ; JOHN AVILA; CHUCK
GRIEGO; MICHAEL GALLEGOS; MACARIO
GONZALES; MORRIS MADRID; DIANE MOORE;
TONY MARQUES; EUGENE ROMERO; CRUZ
ROYBAL; AND LOUIE TRUJILLO, all in their
individual, personal, private and official capacities,
for actions committed while acting as public officers
and/or employees of the Machinery of Government of
the City of Las Vegas, New Mexico; and ERIC LETEY
and ED ZENDEL, each in their individual, personal,
private and official capacities, for actions committed
while acting as employees of the New Mexico Municipal
League, by and through the New Mexico Self-Insurers'
Fund; THE NEW MEXICO SELF-INSURERS' FUND;
THE NEW MEXICO MUNICIPAL LEAGUE;
FIFTEEN JANE DOES; and FIFTEEN JOHN DOES,

     Defendants.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** comes before the Court on: (i) Plaintiff Margaret D. Edwards-Flynn's

Objection to Memorandum Opinion and Order Filed March 31, 2009, filed April 6, 2009 (Doc. 59)

and (ii) her Notice of Reapproachment, filed April 29, 2009 (Doc. 61), both of which the Court

construes as motions for reconsideration of its Memorandum Opinion and Order filed on March 31,

2009 (Doc. 57);[1] and (iii) that part of Edward-Flynn's Motion to Rescind Orders, Filed March 9th

---

[1] When a Magistrate Judge on referral files proposed findings and recommendations for the
presiding District Judge to consider before the District Judge issues an order disposing of a
substantive motion, a party may file an "objection" to those recommendations, which the District

and 31st, 2009, and Remand this Case to the State District Court, filed May 6, 2009 (Doc. 62), which pertains to the Court's March 31 Memorandum Opinion and Order.[2]   The primary issue is whether the Court should reconsider and rescind its Order dismissing all of Plaintiff Margaret D. Edwards-Flynn's claims against Defendants Eric Letey, Ed Zendel, the New Mexico Self-Insurer's Fund ("the Fund"), and the New Mexico Municipal League ("the League"), which the Court collectively calls "the Fund Defendants."   Because the Court concludes that it should dismiss Edwards-Flynn's claims against the Fund Defendants, but for reasons different than those that the Court stated in its March 31 Memorandum Opinion and Order, the Court grants the motions in part, withdraws and vacates its Memorandum Opinion and Order issued March 31, 2009, and replaces it with this Memorandum Opinion and Order.

## FACTUAL BACKGROUND

As relevant to the Fund Defendants' motion to dismiss and Edwards-Flynn's motions for reconsideration, the Court accepts as true the allegations in Edwards-Flynn's Complaint for purposes of resolving the motion to dismiss.   According to Edwards-Flynn, "the New Mexico Municipal []

---

Judge will consider before issuing a ruling.  28 U.S.C. § 636(b)(1)(C).  Nothing in the federal rules, however, provides for filing objections to an order that the presiding District Judge issues. Similarly, there is no provision for filing a "notice of reapproachment."  If a party desires reconsideration of the Court's ruling that will result in the Court issuing an order, it must make a "motion," thereby putting the opposing parties on notice that they need to respond.  See Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").  The Court has liberally construed Edwards-Flynn's "Objections" and her "Notice of Reapproachment" as motions for reconsideration.

[2] The Court notes that Edwards-Flynn improperly combined in a single document her two requests for rescinding two Orders, in violation of the United States District Court for the District of New Mexico's Administrative Order No. 92-88, issued May 4, 1992.  That Administrative Order requires all parties to submit separate motions for "each matter upon which adjudication or a ruling of the Court is sought," except that a party may plead in the alternative as allowed by applicable rules or statutes, such as in a motion for summary judgment.

League organized and administers the New Mexico Self-Insurers' Fund, which offers Workers' Compensation, general liability, law enforcement, civil rights, errors and omissions, auto liability, property and volunteer coverage to its members."  Complaint at 40, ¶ 85, filed February 20, 2008 (Doc. 1, Ex. A).  The City of Las Vegas insures itself through the Fund, and the League "acts through the Fund."  The two League-employee Defendants, Eric Letey, a claims examiner, and Ed Zendel, the risk-services manager who is Letey's "superior," "act by and through the . . . Fund."  Complaint ¶¶ 15-18, at 7-8; ¶¶ 73-74, at 35.  The Complaint also alleges that Letey and Zendel are "state employees" who have "official duties," and that Letey's actions, as the Leagues' and Fund's agent/employee, binds both of those entities.  Complaint ¶ 82, at 39, id. ¶ 85, at 41.  Edwards-Flynn maintains that, because the City is the Fund's "client," it has a "direct financial interest in shielding the City, the city defendants, and *itself* from any liability for the city defendants' wrongful actions."  Complaint ¶ 79, at 37 (italics in original).

Edwards-Flynn states that she sent a letter to Las Vegas city employees Defendants Cheryl Ann Yara and Matthew Sandoval, with a copy to Las Vegas' Mayor, City Manager, and Communications Director, in May 2006, "informing" them how Yara and Sandoval had wronged her and seeking disciplinary action against them.[3]  Complaint ¶¶ 45, 52, 54, 59, at 20, 23, 24, 27.  These City Defendants interpreted the letter as a claim for damages against them and forwarded it to Letey at the Fund.  See Complaint ¶ 75, at 35.  In July 2006, Edwards-Flynn also sent to these City Defendants an affidavit and contended that, if they failed to rebut her statements, those statements would later be binding upon them in court.  See Complaint ¶¶ 45, 52, 54, 59, at 20, 23,

_____

[3]  The City Defendants include Yara, Sandoval, Henry O. Sanchez, John Avila, Chuck Griego, Michael Gallegos, Macario Gonzales, Morris Madrid, Diane Moore, Tony Marquez, Eugene Romero, Cruz Roybal, and Louie Trujillo.

24, 27.

Edwards-Flynn alleges that, on June 9, 2006, Letey sent her a letter informing her that he had reviewed the charges she had raised against the City Defendants, and had determined that she had not suffered any violations of her civil rights and that the Fund "denied her claim." Complaint ¶¶ 73-75, at 35- 36. Edwards-Flynn states that this letter was "entirely fraudulent, and apparently was sent to deceive, defraud, and intimidate plaintiff," Complaint ¶ 75, at 36, and that Letey made misrepresentations because she had not alleged violation of "civil rights" in her letter to the City Defendants, Complaint ¶ 77, at 36. Edwards-Flynn maintains that she then sent three letters and another affidavit to Letey, with copies to Zendel, setting forth "lawful notification, that if the recipients failed to rebut, in writing, to plaintiff, any of the charges made in plaintiff's written communications to them, then, they admit to all of plaintiff's charges, contained therein, fully binding upon them in any court, without their protest . . . ." Complaint ¶ 81, at 38. Letey and Zendel did not respond. Edwards-Flynn alleges that Letey and Zendel, whose acts she maintains bind the League and the Fund as their agents, failed to rebut her charges and are thus bound by them in court. See Complaint ¶¶ 74, 81, at 35, 38.

Edwards-Flynn accuses Letey and Zendel of violating Art. XX, § 1, Art. II, §§ 2, 3, 4, and 8, Art. VII, § 2, and Art. IV, § 25 of the New Mexico Constitution, and of violating Sections 3 and 4 of the Fourteenth Amendment to the United States Constitution. See Complaint ¶¶ 82-83, at 39-40. She also contends that they violated the Due-Process clauses of both Constitutions. See Complaint ¶ 82, at 39. As factual support for the alleged violations, Edwards-Flynn states that Letey and Zendel, on behalf of the Fund: (i) violated their oaths to uphold and support the constitutions, see Complaint, ¶ 82, at 39; (ii) fraudulently contacted Edwards-Flynn by sending her a letter

4

purporting to deny a "civil-rights" claim,[4] which contact, coupled with the Fund's direct financial interest in protecting the City of Las Vegas from liability, suggests "it is entirely possible" that the Fund conspired with the City Defendants to defraud Edwards-Flynn, Complaint ¶¶ 73, 75, at 35, 36; and (iii) denied her claim against the City and its employees – even though she states she "never made" claim to the Fund – thereby "upholding" the City Defendants' violation of her rights to due process, Complaint ¶¶ 82, 86, at 39, 41.  Edwards-Flynn also contended that Letey and Zendel were in dereliction of their official duties, and that they violated NMSA 1978 § 10-16-3A-B.  See Complaint ¶ 82, at 39.

## PROCEDURAL BACKGROUND

The Defendants removed Edwards-Flynn's action from state court, contending that she was attempting to state claims for violation of her federal constitutional rights under 42 U.S.C. § 1983, thereby giving the Court original jurisdiction over her claims and entitling them to the right of removal under 28 U.S.C. § 1441(b).  The Court set forth Edwards-Flynn's factual allegations against the City Defendants in its  March 9, 2009 Memorandum Opinion and Order at 2-4 (Doc. 56)("March 9 MOO") ruling on Edwards-Flynn's Motion to Remand.  Although she contended in her motions for remand that she was not bringing claims under § 1983 and pointed out that she had never cited § 1983 as a basis for recovery of damages in her Complaint, the Court concluded that

---

[4] Edwards-Flynn bases her claim of lying, fraud, and misrepresentation on two acts: Letey's statement in the denial letter that Edwards-Flynn made a "claim" and his statement that she had alleged violation of her "civil rights" when she had complained only that they violated her constitutional rights.  Complaint ¶¶ 75, 77, at 35-36.  She contends that Letey "apparently does not know the difference between civil rights and Constitutional rights."  Id. ¶ 77, at 36.  Constitutional rights, however, are civil rights. 15 Am. Jur. 2d Civil Rights § 1 (1976)("[T]he term 'civil rights' refers to the enjoyment of such guaranties as are contained in constitutional or statutory law.").  See 14 C.J.S. Civil Rights § 1 (2009)(stating that "the term ['civil rights'] is employed to denote or signify the rights, privileges, or immunities which are guaranteed or accorded protection under various provisions of federal and state constitutions and civil rights statutes").

Edwards-Flynn was "trying to avoid federal-question jurisdiction" and held that, "even though she did not expressly mention § 1983, Edwards-Flynn has set forth a complaint that, in substance, alleges a § 1983 cause of action" for violation of her federal constitutional rights." March 9 MOO at 16. The Court thus adopted the Defendants' position that it should construe the Complaint as including a claim for violation of her federal constitutional rights under § 1983 and denied Edwards-Flynn's motion to remand. In summary, the Court held:

> Because the Complaint alleges that Yara's possibly intentional failure to follow state laws regarding candidacy for public office violated Edwards-Flynn's federal constitutional right to fairly run for public office, even though she did not formally bring a claim under any federal statute, the face of the Complaint affirmatively states a substantial federal question that gives this Court original subject-matter jurisdiction over her claims.

Id. at 16-17.[5] The Court has addressed the Plaintiff's numerous motions for reconsideration of the

---

[5] The Court also stated: "While Edwards-Flynn indicates in her briefing that she is willing to withdraw or abandon any claims or remedies for violation of federal constitutional rights, to obtain remand, she must first file either an amended Complaint that does not allege violation of federal constitutional rights or move for voluntary dismissal of any federal constitutional claims under Fed. R. Civ. P. 41(a)(2)." March 9, 2009 MOO at 19. Edwards-Flynn states that she "has no recollection or knowledge" of making any statement that would indicate she was willing to withdraw or abandon a claim for remedy of violation of her federal-constitutional rights. Objections to Memorandum Opinion and Order Filed March 9, 2009, at 3, filed April 6, 2009 (Doc. 58)("Objections"). What Edwards-Flynn has done, however, is vigorously contest removal, insist that she seeks no remedy for violation of her federal-constitutional rights under § 1983, and note in her briefing that a "plaintiff can prevent removal by ignoring the federal claim and alleging only state law claims." Motion to Rule on Emergency Motion for Decision on Summary Remand at 4, filed September 16, 2008 (Doc. 35). She has also contended that she "is not a citizen of the United States," and that she "did not claim any rights of Due Process of law under the 14th Amendment" of the federal constitution, Response in Opposition to Defendants' Motion to Dismiss Filed September 4, 2008, at 9, filed September 22, 2008 (Doc. 38); that the Defendants' assertions that she "claims rights" under Article VI and the 14th Amendment of the federal constitution were false, Motion to Strike Defendants Motion to Dismiss Filed September 4, 2008, at 6, filed September 19, 2008 (Doc. 37); and that the Defendants were improperly focusing on violation of federal constitutional rights instead of violation of her rights under the state constitution that resulted from violation of state laws, see Consolidated Reply to Defendants' Response in Opposition to Plaintiff's Emergency Motion for Decision on Summary Remand at 6, filed April 17, 2008 (Doc. 18). In any case, Edwards-Flynn has not amended her Complaint or dismissed her federal claims, and states that

March 9, 2009 Memorandum Opinion and Order denying remand in a separate opinion and order.

See Memorandum Opinion and Order, filed January 26, 2010 (Doc. 118)("March 31 MOO").

In the March 31 MOO, the Court held:

Because the Court finds that the Defendants on this motion were not governmental entities or state actors, the Court will dismiss all claims against them for constitutional violations. Because all of Edwards-Flynn's claims against the Defendants on this motion are constitutional claims, the Court will dismiss all claims against these Defendants.

March 31 MOO at 2.  In her Objections to the Court's March 31 MOO, Edwards-Flynn repeated her

contention that the Court had no jurisdiction to enter the Order because removal was improper.  See

Objections at 2 (Doc. 59).  She again asserted that she had no intention to bring any claims against

the Fund Defendants under § 1983; that she had not invoked the New Mexico Tort Claims Act

("NMTCA") as a source of relief; and that the Court "unlawfully inserted itself as the 'master' of

plaintiff's complaint."  Objections at 3-5.  She contends that she sued Letey and Zendel for

misrepresentation and fraud under state law,[6] which "resulted in deprivations of Constitutionally

guaranteed Rights," and that she sued the two entities for failing to "stop or correct it."  Objections

at 7-8.  She contends that the League and the Fund are "accountable" for their employees' actions

as "Agents-Principals."  Objections at 7-8.  Edwards-Flynn contends that Letey and Zendel

committed fraud because she had "made no claim of any type to Letey, Zendel, or the Fund," thus

---

she is not going "to abandon her Constitutionally secured Rights and any claims related thereto."
Objections at 3-4.

[6] The elements of common-law fraud in New Mexico are: "(a) a misrepresentation of fact, (b) known by the maker to be false, (c) made with the intent to deceive and to induce the other party to act in reliance, and (d) actually relied on by the other party to his or her detriment."  Eoff v. Forrest, 109 N.M. 695, 699, 789 P.2d 1262, 1266 (1990).  Even if the Fund Defendants were not immune from liability for state-law torts under the NMTCA, Edwards-Flynn has stated no facts to indicate that she relied to her detriment on the Fund's letter denying the perceived or potential claim, which was the only communication the Fund Defendants made to Edwards-Flynn.

Letey's "statements alleging she made a claim were false." Objections at 8. She states that she also "accused these defendants of fraud" because they upheld the City Defendants' actions that "irreparably harmed her political campaign." Objections at 9. And she contends that the NMTCA cannot be used to "shield errant public officers from accountability and liability for their actions which harm citizens." Objections at 11.

Soon thereafter, Edwards-Flynn filed a Notice of Reapproachment. See Doc. 61, filed April 29, 2009 ("Notice"). In the Notice, she incorporated her previous Objections by reference, again arguing that the Defendants' "alleged grounds for removal do not exist in plaintiff's Complaint." Notice at 1-2. She requested that the Court rescind its Order and remand the case to state court. See Notice at 4. She again insisted that she was "well aware" of the remedies provided under § 1983 and had deliberately not brought such claims. Notice at 4. As in her Objections, Edwards-Flynn contends that she brought her claims against Letey and Zendel solely under state law, and that, though they may not "technically" be liable for violation of her Constitutional rights, her claims were state-law claims for misrepresentation and fraud, which resulted in deprivation of her constitutional rights. See Notice at 5-8.

A week later, Edwards-Flynn filed a motion to rescind the Court's March 9, 2009 and March 31, 2009 Orders and to remand the case back to state court. See Motion to Rescind Orders, Filed March 9th & 31st, 2009, and Remand this Case to the State District Court, filed May 6, 2009 (Doc. 62)("Motion to Rescind"), in which she incorporated her Objections and her Notice of Reapproachment.[7] See Motion to Rescind at 2. She contends that the Court's statement that she had

_____

[7] The Court has addressed the part of the Motion to Rescind that challenges the March 9, 2009 Memorandum Opinion and Order in the Court's January 26, 2009 Memorandum Opinion and Order. See Memorandum Opinion and Order, filed January 26, 2010 (Doc. 118).

brought claims that the Defendants violated her rights under Article III of the United States Constitution was "incorrect," arguing that she had cited Article III of the U.S. Constitution only "to establish the state court's jurisdiction under the Supreme Law of the Land, as expressed in the New Mexico Constitution, Art. II, Section One."  Motion to Rescind at 4.  She again contends that the Defendants "presented false claims for removal," and that she did not bring claims for violation of "Title 42; Section 1983; Civil Rights Act; civil rights; discrimination; due process under the 14th Amendment; [or] the New Mexico Tort Claims Act."  Motion to Rescind at 5.

## STANDARDS FOR DECIDING A MOTION FOR RECONSIDERATION

Because Edwards-Flynn seeks reconsideration of non-final orders, her numerous motions for reconsideration are "interlocutory motion[s] invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."  Wagoner v. Wagoner, 938 F.2d 1120, 1122 n. 1 (10th Cir. 1991).   A motion for reconsideration is an "inappropriate vehicle[] to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion."  Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.  It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  Id. (citation omitted).

## STANDARDS FOR DECIDING A MOTION TO DISMISS

A complaint does not require "detailed factual allegations," but the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)(internal quotation marks and bracket omitted).  A complaint must

contain enough allegations of fact "to state a claim to relief that is plausible on its face." Id. at 1974. In resolving a motion to dismiss brought under rule 12(b)(6), the court must determine whether the factual allegations are sufficient "to raise a right to relief above the speculative level," while assuming "that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal quotation marks omitted).

The Supreme Court of the United States has recently re-emphasized that conclusory statements without sufficient underlying supporting factual allegations will not survive a motion to dismiss for failure to state a claim.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Accordingly, it is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability.  Id. (internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  Instead, the courts should take a two-step approach in determining whether a complaint states a claim upon which relief may be granted.  First, it "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth." Id. at 1951.  Then it "consider[s only] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id.  "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers," which "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## THE NEW MEXICO TORT CLAIMS ACT

The New Mexico Legislature enacted the NMTCA because it "recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity."  NMSA 1978 § 41-4-2(A).  The New Mexico Legislature, however, also recognized "that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done." NMSA 1978 § 41-4-2A.  As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act."  NMSA 1978 § 41-4-2A.  The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." NMSA 1978 § 41-4-2C.

The NMTCA is the

exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

NMSA 1978 § 41-4-17A.  A plaintiff may not sue a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions granted for governmental entities and public employees in the NMTCA.  See Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App.1985), rev'd on other grounds by Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986).  "Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."  Begay v. State, 104 N.M. at 486, 723 P.2d at 255 (internal quotation marks omitted).  Thus, if no specific waiver can be found in the NMTCA,

11

a plaintiff's complaint against the governmental entity or its employees must be dismissed.  See Begay v. State, 104 N.M. at 486, 723 P.2d at 255.

A plaintiff also may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity.  "In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act." Barreras v. N.M. Corr. Dep't, 133 N.M. 313, 319, 62 P.3d 770, 776 (Ct. App. 2003).  See Chavez v. City of Albuquerque, 124 N.M. 479, 482, 952 P.2d 474, 477 (Ct. App. 1998) (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution against a city or its employees or agents unless the NMTCA waives immunity); Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. 446, 449, 744 P.2d 919, 922 (Ct. App. 1987)(holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board); Begay v. State, 104 N.M. at 488, 723 P.2d at 257 (finding that no waiver existed in NMTCA for suit under Article II, § 11 of the New Mexico Constitution).

In Seeds v. Lucero, 137 N.M. 589, 113 P.3d 859 (Ct. App. 2005), the New Mexico Court of Appeals held that "a public employee may be within the scope of authorized *duty* even if the employee's *acts* are fraudulent, intentionally malicious, or even criminal."  137 N.M. at 592, 113 P.3d at 862 (italics in original).  In Vigil v. State Auditor's Office, 138 N.M. 63, 116 P.3d 854 (Ct. App. 2005), the New Mexico Court of Appeals held that the NMTCA also protects from liability a state auditor conducting audits in violation of statute, and making false audits.  See 138 N.M. at 68, 116 P.3d at 859.   And in Henning v. Rounds, 142 N.M. 803, 171 P.3d 317 (Ct. App. 2007), the New Mexico Court of Appeals held that school officials' allegedly false and

misleading comments and evaluations of a teacher were actions committed within the scope of their duties and they were, therefore, immune from liability under the NMTCA. See 142 N.M. at 806-08, 171 P.3d at 320-22.

## ANALYSIS

Edwards-Flynn's motions for reconsideration bring to the Court's attention the Court's misapprehension of the undisputed facts surrounding the public nature of the League and the Fund entities, and their relationship to the City as the City's agents or instrumentalities.  It also brought to the Court's attention the dispute between Edwards-Flynn and the Fund Defendants regarding whether Letey and Zendel are "state employees" or "governmental actors."  Accordingly, the Court has reconsidered its March 31 MOO, and withdraws that Opinion, vacates the Order, and substitutes the March 31 MOO with this Memorandum Opinion and Order.  The Court concludes, based on the allegations in the Complaint, that it must accept as true, for purposes of the motion to dismiss and based on the Fund Defendants' central arguments and admissions, that the League and the Fund are public entities or instrumentalities, but that Edwards-Flynn has not stated any viable claims against Letey, Zendel, the Fund, or the League.  Edwards-Flynn has failed to allege sufficient facts regarding the Fund Defendants to support a claim against them for violation of her federal right to due process or for violation of other sections of the Fourteenth Amendment of the federal Constitution.  Insofar as her claims against these Defendants are for violations of her state constitutional rights, for violation of the New Mexico statutes, or for fraud or misrepresentation under state law, the NMTCA bars them.

I.     **THE COURT WILL NOT RECONSIDER ITS DECISION TO DENY REMAND OF EDWARDS-FLYNN'S CASE.**

Insofar as Edwards-Flynn bases her motions for reconsideration in part on the same

jurisdictional arguments she made in her motions to remand, which this Court has fully addressed and rejected, the Court declines to reconsider its decision to maintain jurisdiction over her case. See Servants of Paraclete v. Does, 204 F.3d at 1012. Edwards-Flynn had ample opportunity to dismiss her federal claims and remedies and to have the Court remand the remaining state claims to state court. She declined to do so. The Court will, therefore, overrule her Objection to the March 31 MOO and deny her Notice of Reapproachment, which the Court considers to be a motion to reconsider.

## II.     THE COURT WILL ASSUME, FOR PURPOSES OF THIS MOTION, THAT THE LEAGUE AND THE FUND ARE STATE ENTITIES AND THEIR EMPLOYEES ARE STATE EMPLOYEES.

The parties did not brief fully, if at all, the issue of whether the League and Fund are public or governmental or state entities. Instead, the Fund Defendants proceeded on the assumption that the League and Fund are governmental entities, and that they are public employees which the NMTCA protects. No one has presented evidence or authority attached to the motions from which the Court can arrive at the legal conclusions that they are "state" entities and "state employees."

The NMTCA protects all "governmental" entities -- be they city, county, or state, and the agents or "public" employees from liability. The Court does not have enough information to conclude that the League and Fund are "state" entities and employees based on the League's amended answer to the Complaint, which states that it is an "instrumentality" of the City and that its employees are not state employees. The Fund Defendants did not argue in their briefing that the employees were not state employees; rather, they stated that Letey and Zendel were not "governmental actors." Even if the Court could infer that they were also implying by this statement that they also are not state employees, because Edwards-Flynn alleged that they are state employees in her Complaint, the Court must accept her allegation as true and not the Fund's allegation, unless

the Fund Defendants present evidence to establish their status as a matter of law, which they did not do.  Accordingly, while the Court withdraws its March 31 MOO, the Court will not, at this time, make findings and conclusions about the Fund's and League's legal status based solely on allegations in Edwards-Flynn's Complaint, which have not been properly tested.

## III.    THE COURT MAY HAVE ERRED IN GRANTING THE MOTION TO DISMISS ON A LEGAL ALLEGATION NOT FULLY BRIEFED.

Edwards-Flynn's Complaint alleges that the League organized and administers the Fund, which insures the City of Las Vegas.  It states that Letey and Zendel are League employees, who "act by and through the . . . Fund."  Complaint ¶¶ 15-18, id. at 7-8; ¶¶ 73-74, at 35.  The Complaint also alleges that Letey and Zendel are "state employees" who have "official duties," and that Letey's actions, as the Leagues' and Fund's agent/employee, binds both of those entities.  See Complaint ¶ 82, at 39; id. ¶ 85, at 41.  Although the Fund Defendants denied some of these allegations in their Amended Answer, see Amended Answer ¶ 6 at 2, filed March 6, 2009 (Doc. 6) (denying that Letey and Zendel have an "official capacity"); id. ¶ 28 at 6 (denying "that Letey and Zendel are state employees"), they stated that the League is an "instrumentality" of the City of Las Vegas and that it "administers the Fund," which is a "Joint Powers Agency" created by state statute.  Amended Answer at 7.  In their reply in support of their motion to dismiss, however, they contend that they are entitled to dismissal based on the law, and did not attach any documents or evidence to challenge any of Edwards-Flynn's allegations.  See Defendants Eric Letey, Ed Zendel, New Mexico Self-Insurer's Fund, and New Mexico Municipal League's Reply in Support of Their Motion to Dismiss at 1, filed April 29, 2009 (Doc. 24)("Reply")(noting that a motion to dismiss "tests the law of the claim and not the facts that support it")(citing Gonzales v. United States Fid. & Guar. Co., 99 N.M. 432, 659 P.2d 318 (Ct. App. 1983).

In their motion to dismiss, the Fund Defendants raised five central arguments: (i) "New Mexico Constitutional claims under Art. XX, § 1, Art. II, §§ 2, 3, 4, and 8 and Art. VII § 2 must be dismissed as these claims do not provide for a private cause of action" because "[t]here is no affirmative legislation nor are there Tort Claims Act waivers for violation of the articles of the New Mexico Constitution claimed by Plaintiff and the alleged actions of the Fund Defendants are not encompassed by any of the eight waivers of immunity," Defendants Eric Letey, Ed Zendel, New Mexico Self-Insurer's Fund, and New Mexico Municipal League's Motion to Dismiss Plaintiff's Claims in Their Entirety at 2-3, filed April 7, 2008 (Doc. 17); (ii) Edwards-Flynn's "equal protection claims under the New Mexico Constitution must fail . . . [b]ecause she does not make any assertion that she is a member of a protected class or a member of a discriminated class," Motion to Dismiss at 5; (iii) her claims that "the Fund Defendants violated section 3 and section 4 of the Fourteenth Amendment of the United States Constitution" must fail because neither section applies to the Fund Defendants;[8] (iv) Edwards-Flynn's claim that "her [federal] due process rights were violated by the Fund Defendants when the Fund Defendants issued her a denial letter" must fail because she could not "show that she had a liberty or property interest" entitling her to receive a letter that did not deny her claims and therefore, she was not entitled to constitutional procedural protections, Motion to Dismiss at 7-8; and (v) if she was attempting to allege a constitutional conspiracy claim, it must fail because Edwards-Flynn had failed to "allege specific facts showing an agreement and concerted action amongst the defendants, [and c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim," Motion to Dismiss at 9-10.

---

[8]   According to the Fund Defendants, section 3 "only applies to elected members of government to disqualify them from holding office," Motion to Dismiss at 6, and neither Letey nor Zendel are "elected government officials," Motion to Dismiss at 7, and section 4 "applies to payment of debts as a result of civil strife," and Edwards-Flynn "has not alleged that the Fund Defendants are questioning public debt as a result of civil strife," Motion to Dismiss at 7.

In her response brief, Edwards-Flynn contended, without citing to any legal authority, that the NMTCA did not apply because the Defendants' wrongful acts were conducted "outside the scope of duties." Plaintiff's Response in Opposition to Defendants Eric Letey, Ed Zendel, New Mexico Self-Insurer's Fund, and New Mexico Municipal League's Motion to Dismiss Plaintiff's Claims in their Entirety at 2, filed April 22, 2008 (Doc. 19). She also contended that the Fund, the League, and its employees had no immunity because both the League and the Fund are created by statute to serve and insure cities, therefore "those who work for either entity are public employees," and they were bound by ethical statutes and oaths to act lawfully and could not be immune from liability if they failed to do so. Response at 6.

In their reply, the Fund Defendants asserted that, even if "the New Mexico Tort Claims Act does not apply to the Fund Defendants as they allegedly acted outside the scope of their employment duties," Edwards-Flynn could not point to any "affirmative legislati[on] granting individuals permission to bring a private cause of action based on violations of the provisions of the New Mexico Constitution," so her claims brought under the New Mexico Constitution had to be dismissed. Reply at 2-3. They further argued that Edwards-Flynn's arguments regarding immunity were not relevant because her Complaint "does not provide assertions of a protected class as required for an equal protection claim, identify a substantive underlying interests of a federal due process claim, provide legal justification and applicability to the 14th Amendment claims, or anything other than conclusory allegations of a Constitutional conspiracy. Therefore, even taking the allegations in Plaintiff's Complaint as true, these claims are legally insufficient and must be dismissed." Reply at 3-4. Nowhere in their briefing did the Fund Defendants argue or suggest that

the League or the Fund were not public or governmental entities.[9]

When arguing in their motion to dismiss that the Court had to dismiss Edwards-Flynn's procedural due-process claims brought under § 1983, Letey and Zendel contended that "the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."  Motion to Dismiss at 8.  They then added an alternative conclusory basis for why they could not be held liable for violation of § 1983, which they did not support with any facts or law: "In any event, neither Mr. Letey nor Mr. Zendel are governmental actors."  Motion to Dismiss at 8.

---

[9] In their amended answer, the Fund Defendants raised the following affirmative defense:

The Fund is a Joint Powers Agency organized pursuant to §§ 11-1-1, *et seq.*, NMSA 1978.  The League is a separate entity and an instrumentality of its membership consisting of the incorporated municipalities of the State of New Mexico which is organized pursuant to § 115 of the Internal Revenue Code.  Pursuant to a Professional Services Agreement between the League and the Fund, the League administers the Fund. Neither is a person, as that term is defined under 42 U.S.C. § 1983 and, therefore, they cannot be liable for alleged violations of Plaintiff's constitutional rights.

Amended Answer at 7.  The Fund Defendants did not pursue this defense in their motion to dismiss, however, perhaps because, if a public entity is "an instrumentality" or agent of a city, it could be a "person" for purposes of liability under § 1983, just as a city is.  See Will v. Michigan, 491 U.S. 58, 69 n.8 (1989)(noting that the phrase "bodies politic and corporate" " was used to mean corporations, both private and public (municipal)," and, therefore,  municipalities could properly be considered "persons" under § 1983); Inyo County, Cal. v. Paiute-Shoshone Indians , 538 U.S. 701, 713 n.1 (2003)(Stevens, J., concurring in the judgment)("The Dictionary Act [of 1871], which was passed just two months before § 1983 and was designed to supply rules of construction for all legislation, provided that 'the word 'person' may extend and be applied to bodies politic and corporate . . . .").  Compare Lippoldt v. Cole, 468 F.3d 1204, 1209, 1212-16 (10th Cir. 2006)(holding that "an unincorporated association consisting of a group of volunteers who oppose abortion" was not a "person" entitled to seek redress under § 1983 because, such an association was not included within the definition of "person" in the 1871 Dictionary Act), with Jund v. Town of Hempstead, 941 F.2d 1271, 1278-79 (2d Cir. 1991)(citing the Supreme Court's holdings in NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982)("The NAACP [an unincorporated association] -- like any other organization -- of course may be held responsible for the acts of its agents . . . that are undertaken within the scope of their actual or apparent authority"), American Soc'y of Mech. Eng'rs v. Hydrolevel Corp., 456 U.S. 556 (1982), and United Mine Workers v. Coronado Coal Co., 259 U.S. 344 (1922), to hold that an unincorporated association may be held liable under § 1983).

The Court listed the Fund Defendants' five central bases for dismissal made in their motion to dismiss as "primary issues" in its March 31 MOO. See March 31 MOO at 1-2. The opinion did not, however, address these issues. Instead, the Opinion holds, on a basis not raised by the Fund Defendants and not fully briefed by the parties, and contrary to the Fund Defendants' major argument that they are governmental or public entities and employees entitled to protection from liability under the NMTCA, that

> [b]ecause the Court finds that the Defendants on this motion were not governmental entities or state actors, the Court will dismiss all claims against them for constitutional violations. Because all of Edwards-Flynn's claims against the Defendants on this motion are constitutional claims, the Court will dismiss all claims against these Defendants.

March 31 MOO at 2. In reviewing the March 31 MOO, the Court concludes that it may have erred in granting dismissal based on an argument not fully briefed in the motion to dismiss and by not accepting as true, for purposes of ruling on the motion to dismiss, Edwards-Flynn's allegations that the League and the Fund are public entities that acted on behalf of the City, and that Letey and Zendel are the League's employees with official duties. See Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1965 (noting that the district court ruling on a motion to dismiss must assume "that all the allegations in the complaint are true (even if doubtful in fact)"). In light of Edwards-Flynn's allegations, and the Fund Defendants' major contention in their motion to dismiss that the Fund and the League are governmental entities and their employees Letey and Zendel are public employees protected from liability under § 41-4-4A of the NMTCA (granting immunity to any "governmental entity and any public employee while acting within the scope of duty"), the Court believes the better course would be to not credit, at this time, the Fund Defendants' unsupported and conclusory alternative statement that "neither Mr. Letey nor Mr. Zendel are governmental actors." Motion to Dismiss at 8. Because a City and its agents or employees are "persons" who may be sued under

19

§ 1983 as state actors, see Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Court should

not have analyzed, without more information about the Fund, Letey's and Zendel's actions using

the various putative state action tests as though they were private actors instead of public employees

acting as agents for the City. For these reasons, the Court withdraws and vacates the Memorandum

Opinion and Order issued March 31, 2009.

## IV.   EDWARDS-FLYNN HAS NOT ALLEGED SUFFICIENT FACTS TO SUPPORT A CLAIM FOR VIOLATION OF THE DUE-PROCESS CLAUSE OR THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

Edwards-Flynn continues to argue that she has brought no claims against any of the Fund

Defendants under 42 U.S.C. § 1983 for violation of her federal constitutional rights. See Notice at

9; Motion to Rescind at 5. Nevertheless, her Complaint contains the conclusions that "by their own

actions . . . Letey and Zendel upheld violations of due process of law, as guaranteed in both

constitutions," Complaint ¶ 82, at 39, and that "Letey attempted to . . . deny her due process and

deny her a claim she never made for the benefit of [the City of Las Vegas] and the Fund itself,"

Complaint ¶ 86, at 41-42. Accordingly, the Court must address Edwards-Flynn's federal

constitutional claim that Letey and Zendel denied her due process of law, and her claim that the

Fund Defendants violated section 3 and section 4 of the Fourteenth Amendment of the United States

Constitution. See Complaint, ¶ 83, at 40.

### A.   EDWARDS-FLYNN HAS NOT ALLEGED SUFFICIENT FACTS TO SUPPORT A CLAIM FOR VIOLATION OF THE DUE-PROCESS CLAUSE.

The Due Process Clause guarantees due process only when a person is deprived of life,

liberty, or property. See Trentadue v. Integrity Comm., 501 F.3d 1215, 1236 (10th Cir. 2007). To

assert a valid due-process claim, Edwards-Flynn must show that she had a protected liberty or

property interest, and that the Fund Defendants violated that interest. See Crown Point I, LLC v.

20

Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1216 (10th Cir. 2003)(internal quotation and citation omitted).  "A property interest includes a 'legitimate claim of entitlement' to some benefit created and defined by 'existing rules or understandings that stem from an independent source such as state law.'"  Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d at 1216 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).

The only actions that Edwards-Flynn alleges regarding the Fund Defendants are: (i) Letey sent her a letter which was "entirely fraudulent, and apparently was sent to deceive, defraud, and intimidate plaintiff into silence and to discourage her from pursuing legal actions," Complaint ¶ 75, at 36; (ii) Letey denied what he believed was a claim for damages for alleged violation of Edwards-Flynn's civil rights; (iii) by denying what they perceived as a claim for damages, the Fund Defendants "upheld" the City Defendants' allegedly illegal acts; and (iv) the Fund did not otherwise respond to Edwards-Flynn's communications.  To establish her federal constitutional due-process claim, Edwards-Flynn must identify a constitutionally protected liberty or property interest.  She has not pled facts establishing that she had a legitimate claim of entitlement to some benefit of which the Fund Defendants deprived her.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it."  Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).  The Supreme Court has recognized that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  Id. (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 462-63 (1989).  Edwards-Flynn asserts that the Fund Defendants denied her claim for damages asserted against the City of Las Vegas.  See Complaint ¶¶ 75, 77, at 35, 36.  Although Edwards-Flynn may have desired monetary damages from the City of Las Vegas for what she perceived as the City Defendants' unfair or wrongful treatment,

no court had found the City Defendants liable for such treatment, and thus the Fund Defendants

could not have denied her a benefit to which she did not yet have a legitimate claim of entitlement.

She might at some point be entitled to a benefit, but she has to go through due process to get it.  And

she was not denied that due process; the courts are available to her to seek damages if she was

wronged.  The allegations in Edwards-Flynn's Complaint therefore do not state a claim for violation

of Edwards-Flynn's right to due process because they do not describe a protected property or liberty

interest upon which Letey or Zendel impinged.

### B.   EDWARDS-FLYNN HAS NOT PLED SUFFICIENT FACTS THAT THE FUND DEFENDANTS VIOLATED THE FOURTEENTH AMENDMENT.

The Complaint also alleges that the Fund Defendants violated section 3 and section 4 of the

Fourteenth Amendment of the United States Constitution.  See Complaint, ¶ 83, at 40.  Section 3

of the Fourteenth Amendment states:

> No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof.  But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. Const. amend. XIV, § 3.  This section applies to members of government to disqualify them

from holding office if they have engaged in insurrection; it does not apply to Letey or Zendel, who

are League employees.  There is no allegation in the Complaint that Letey or Zendel engaged in any

insurrection or rebellion against the United States or New Mexico.

Section 4 of the Fourteenth Amendment states:

> The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned.  But neither the United States nor

> any State shall assume or pay any debt or obligation incurred in aid of insurrection
> or rebellion against the United States, or any claim for the loss or emancipation of
> any slave; but all such debts, obligations and claims shall be held illegal and void.

U.S. Const. amend. XIV, § 4. This section is also inapplicable to this case because no facts in the

Complaint allege that, through the Fund Defendants' actions, the State has assumed or paid a debt

related to insurrection, rebellion, or slavery.

Edwards-Flynn did not address the Fund Defendants' arguments regarding the propriety of

dismissing her claims on these grounds.  The Court dismisses her claims for violation of the

equal-protection and due-process clauses and for violation of sections 3 and 4 of the Fourteenth

Amendment to the United States Constitution, for failure to state a claim.  See Sheldon v. Vermont,

269 F.3d 1202, 1207 (10th Cir. 2001) (noting that dismissals for failure to state a claim under rule

12(b)(6) fully dispose of claims and are with prejudice); Higgins v. City of Tulsa, No. 03-5193, 103

Fed. Appx. 648, 651 (10th Cir. 2004)("[a] dismissal under Rule 12(b)(6) for failure to state a claim

is generally with prejudice").

## V.     THE NMTCA BARS ALL STATE-LAW CLAIMS.

The Court has supplemental jurisdiction over Edwards-Flynn's claims brought under state

law against the Fund Defendants for violations of the New Mexico Constitution, state statutes, and

for fraud and misrepresentation.  See 28 U.S.C. § 1441(c)(providing that, whenever a removed claim

within the subject-matter jurisdiction of the district court is joined with otherwise non-removable

state-law claims, the federal district court "may determine all issues").  Assuming, without deciding,

that the sections of the New Mexico Constitution and statutes that Edwards-Flynn cites apply to this

case,[10] all state-law claims must be dismissed as the Fund Defendants are immune from liability for

---

[10]   As the Fund Defendants point out, Article XX, § 1 of the New Mexico Constitution
requires only elected or appointed governmental officials to take an oath of office.  See Stockton v.
N.M. Taxation & Revenue Dep't., 141 N.M. 860, 864, 161 P.3d 905, 909 (Ct. App. 2007). For

state-law claims under the NMTCA.  See Barreras v. N.M. Corr. Dep't, 133 N.M. at 319, 62 P.3d at 776 ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."); Chavez v. City of Albuquerque, 124 N.M. at 482, 952 P.2d at 477 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution against a city or its employees or agents unless the NMTCA waives immunity); Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. 446, 449, 744 P.2d 919, 922 (Ct. App. 1987)(holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board); Begay v. State, 104 N.M. at 488, 723 P.2d at 257 (finding that no waiver existed in NMTCA for suit under Article II, § 11 of the New Mexico Constitution).

Edwards-Flynn contends that the Fund Defendants are liable to her because, as public entities and employees, they violated various sections of the state constitution and statutes.  In their motion to dismiss, the Fund Defendants argued that the "New Mexico Constitutional claims under Art. XX, § 1, Art. II, §§ 2, 3, 4,and 8, and Art. VII § 2 must be dismissed as these claims do not provide for a private cause of action" because "[t]here is no affirmative legislation nor are there Tort Claims Act waivers for violation of the articles of the New Mexico Constitution claimed by Plaintiff and the

---

purposes of the motion to dismiss, the Court assumes as true Edwards-Flynn's assertion that Letey and Zendel are not elected or appointed public officials, but rather are the League's "employees." Complaint ¶ 82 at 39.  Further, Article II, § 2 (providing that "[a]ll political power is vested in and derived from the people"), § 3 (providing that the "people of the state have the sole and exclusive right to govern themselves as a free, sovereign and independent state"), and § 8 (providing for free and open elections), and Article VII, § 2 (providing for elected public officer qualifications and prohibiting discrimination) of the New Mexico Constitution are not relevant to the Fund Defendants' action of denying Edwards-Flynn's perceived claim after the election had occurred, and Edwards-Flynn cites no authority creating a private right of action for violations of these sections.

alleged actions of the Fund Defendants are not encompassed by any of the eight waivers of immunity." Motion to Dismiss at 2-3 (Doc. 17).  They contend that Edwards-Flynn can not state a claim against them for alleged violations of the New Mexico Constitution or of other state law because they are governmental or public agencies and employees, and that there is "no waiver of immunity under the Tort Claims Act for the Fund Defendants" for the negligent or intentional acts she accuses them of committing.  See Motion to Dismiss at 2-5.

The Court agrees.  The Complaint states that Letey issued the denial letter during the course of his public employment with the League and Fund.  Accordingly, the Court must dismiss all of Edwards-Flynn's state-law claims, including her claims for violation of the New Mexico Constitution and for alleged fraud and misrepresentation.  The NMTCA provides the exclusive remedy for negligent or intentional torts brought against governmental entities and their employees, and the New Mexico Legislature has not waived immunity for these claims.  See Barreras v. N.M. Corr. Dep't, 133 N.M. at 316, 62 P.3d at 776; Chavez v. City of Albuquerque, 124 N.M. at 482, 952 P.2d at 477; Rubio v. Carlsbad Mun. Sch. Dist., 106 N.M. at 449, 744 P.2d at 922; Begay v. State, 104 N.M. at 488, 723 P.2d at 257; Seeds v. Lucero, 137 N.M. at 592, 113 P.3d at 862; Vigil v. State Auditor's Office, 138 N.M. at 68, 116 P.3d at 859.

Edwards-Flynn has provided no authority for her contentions that the NMTCA does not protect from liability public entities and their employees who allegedly violate state constitutional rights or state statutes, or allegedly commit fraudulent acts or misrepresent facts while performing their official duties, and her contentions are contrary to the above-cited law.

**IT IS ORDERED** that the March 31, 2009 Memorandum Opinion and Order is withdrawn and vacated; that Edward-Flynn's three motions for reconsideration (Docs. 59, 61 & 62) are granted in part and denied in part; and that all claims against Defendants Eric Letey, Ed Zendel, the New

Mexico Self-Insurers' Fund, and the New Mexico Municipal League are dismissed.


_____
UNITED STATES DISTRICT JUDGE


*Counsel and Parties*:

Margaret D. Edwards-Flynn
Las Vegas, New Mexico

> *Pro Se Plaintiff*

Tony F. Ortiz
Christopher M. Grimmer
Scheuer, Yost & Patterson, P.C.
Santa Fe, New Mexico

> *Attorneys for Defendant Cheryl Ann Yara*

Michael W. Brennan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

> *Attorneys for Defendants Eric Letey, Ed Zendel, New Mexico Self-Insurers' Fund, and New Mexico Municipal League*